## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EVAN HUGHES,             )
    Plaintiff,         )       **Civil Action No. 18-50Erie**
             )
             )       **District Judge Baxter**
    v.            )
             )
             )       **Re: Motion to Dismiss [ECF No. 16]**
MS. HAYES, et al,       )
    Defendants.    )

## MEMORANDUM OPINION[1]

United States District Judge Susan Paradise Baxter

### Relevant Procedural History

This civil action was filed in this Court on February 14, 2018. Plaintiff, an inmate incarcerated at the State Correctional Institution at Forest, brings this action against Defendants Ms. Hayes, Mr. Kibbie, Superintendent Overmyer, Deputy Superintendent Sawtelle, Chief Health Care Administrator Kim Smith, and Nurse Hill.

In his complaint, Plaintiff, acting *pro se*[2], alleges that on April 12, 2017 while he was lifting weights, one of the "disks on the machine" fell off hitting him on the head and "causing

---

[1] The parties consented to having a United States Magistrate Judge exercise jurisdiction over this matter. 28 U.S.C. § 636, et seq. ECF No. 4; ECF No. 15. When this case was initiated and originally assigned by the Clerk of Courts, the undersigned was a Magistrate Judge. However, on September 14, 2018, the undersigned was elevated to the position of United States District Judge and this case remained assigned to her.

[2] *Pro se* pleadings, "however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v.

the armbar to snap back with Plaintiff's arm still in place." ECF No. 3, ¶ 12. Plaintiff immediately reported the incident to Defendant Mr. Kibbie, the activities supervisor, who sent Plaintiff to the Medical Department. Plaintiff was examined by Defendant Nurse Hill who told him that his arm was fine and attempted to give him Ibuprofen. Plaintiff submitted "sick call slips" on April 13[th], April 17th, and April 20[th], but did not receive medical attention. After the fourth "sick call slip" was submitted on April 24[th], Plaintiff was examined by PA Sutherland who scheduled a sonogram ultrasound. On May 18, 2017 Plaintiff underwent the ultrasound and the results (which came back May 24[th]) revealed a torn bicep. Sutherland then scheduled Plaintiff for a specialist visit. Nine weeks after the incident, on June 20[th], surgery was performed. After surgery and the removal of an arm brace, Plaintiff requested physical therapy through the "sick call" system and his requests were ignored. As a result of the injury and the delayed medical treatment, Plaintiff alleges that he is unable to perform normal daily activities with his arm and he is unable to work. ECF No. 3.

Plaintiff purports to raise legal claims of deliberate indifference, failure-to-protect and negligence against Kibbie, Hayes, Overmyer, and Sawtelle based on the "faulty weight room equipment" and claims of deliberate indifference and negligence against Nurse Hill and CHCA Smith based on the medical treatment he received. Additionally, liberally construing the allegations, Plaintiff seems to be raising claims of deliberate indifference and negligence against Smith based on a failure to provide rehabilitation care after surgery.

---

MacDougall, 454 U.S. 364 (1982). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

Defendants filed a motion to dismiss. ECF No. 16. Plaintiff has filed a brief in opposition [ECF No. 22], as well as a motion to supplement the record with a Certificate of Merit [ECF No. 21]. These motions are fully briefed and are ripe for disposition by this Court.

**Standard of Review - Motion to dismiss**

A motion to dismiss filed pursuant to Rule 12(b)(6) must be viewed in the light most favorable to the plaintiff and the complaint's well-pleaded allegations must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Emps'. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 146 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McTernan v. City of York, Pa., 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556 citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004). Although the United States Supreme Court ("Supreme Court") does "not require heightened

3

pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, No. 07-528, 2008 WL 482469, at *1 (D. Del. Feb. 19, 2008) quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases. To determine the sufficiency of a complaint under Twombly and Iqbal, the court must follow three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

**The Prison Litigation Reform Act**

### The Exhaustion Requirement

Defendants argue that Hayes, Kibbie, Sawtelle, Overmyer and Smith are entitled to dismissal of the claims against them based on Plaintiff's failure to exhaust administrative

4

remedies in accordance with the requirements of the Prison Litigation Reform Act. Plaintiff

argues to the contrary.[3]

The PLRA, 42 U.S.C. § 1997e(a) provides:

> no action shall be brought with respect to prison conditions under section 1983 of
> this title ... by a prisoner confined in any jail, prisons, or other correctional facility
> until such administrative remedies as are available are exhausted.

Id. The requirement that an inmate exhaust administrative remedies applies to all inmate suits

regarding prison life, including those that involve general circumstances as well as particular

episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12

(2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first

exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d

Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be

completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).

Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available

remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished

Opinion) (10th Cir. May 8, 1997). The exhaustion requirement is not a technicality, rather it is

federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73

(3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required

exhaustion").[4]

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[4] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006)

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

## The Administrative Process Available to State Inmates

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances

---

("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

6

and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804, § 1(A)(11).

## Evidence of Plaintiff's Utilization of the Grievance System

Defendants request that this Court consider evidence outside of the pleadings in support of their motion to dismiss for failure to exhaust. Where a court receives and considers matters outside the pleadings in support of a motion to dismiss, the motion to dismiss should be converted into a motion for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). See Dorsey v. Pennsylvania Department of Corrections, 2016 WL 6124420, at *3 (M.D. Pa. 2016).

In such a situation, a district court must provide sufficient notice of the conversion to the non-moving party and allow that non-moving party, especially a *pro se* prisoner plaintiff, to submit materials to oppose summary judgment. Renchenski v. Williams, 622 F.3d 315, 340-341 (3d Cir. 2010) ("We agree with the majority of our sister circuits that adequate notice in the *pro se* prisoner context includes providing a prisoner-plaintiff with a paper copy of the conversion Order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56(f) affidavit. While we are mindful that this extra requirement imposes some

burden upon the district courts [...], we believe this burden is slight [...]."). Here, this Court provided such a notice to Plaintiff. ECF No. 18. Accordingly, the motion to dismiss shall be treated, in regard to the failure to exhaust defense, as a motion for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, quoting Fed. R. Civ. P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Id. at 330; see also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id.; see also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 381 F. App'x 211, 213 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the

non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") (internal citation omitted).

Here, Defendants have presented the Declaration of Lisa Reeher, the Superintendent's Assistant and Grievance Coordinator at SCI Forest, as well as some of Plaintiff's grievances and appeals. ECF No. 16. Despite being given the opportunity to do so, Plaintiff has not submitted any evidence in support of his opposition to the pending motion.

The evidence reflects that Plaintiff filed a single grievance related to the facts alleged in his complaint. ECF No. 16-2, Declaration of Lisa Reeher. Grievance No. 679747 dated May 28, 2017 explains the circumstances of the incident in the weight room and focuses on the medical care Plaintiff received thereafter. ECF No. 16-3, pages 1-2. The grievance states:

> On this date 4.10.17 and time 2:45 pm, I was on weight room session #2 I was using the pectorial [sic] machine, I was hit in the head by one of the sliding disk, that rotates and it caused the machine to jerk and pull back with more force than it should've on my right arm causing my bicep to tear. I informed the Activities Staff and they immediately wrote me a pass to go too [sic] medical, where I was given a medical exam on my right arm bicep by a female staff member that is on record all she offered was ibuprofen. She also asked if my head was ok since I hit my head to [sic], it was ok even though a little bruising showed up later into the evening. I informed CO1 Smith who working the housing unit in the bubble, that I showed the female medical staff member that it was tore and I was in pain and he said he would call medical again and that was to no avail. I then put in another sick call because I was still in pain and was seen 4.24.17. I believe the actual date for sick that I submitted was 4.21.17. I was then seen by P.A. Mr. Sutherland and he reexamined my arm and I showed him where there is this big knot in my arm where the muscle had retract to, because that's what the female medical staff said the muscle does when it's torn. He knew something was wrong so he scheduled me for a sonogram ultrasound. I was seen on this date 5.18.17 and the results came back on this date 5.24.17, I was once again seen by P.A. Mr. Sutherland where he informed me I was right that the muscle in my bicep has been torn and I'm being scheduled to see a specialist to get my bicep muscle fixed. So do [sic] to the lack of training for your medical staff that didn't provide adequate medical services that has been prolonged for a month and a half to date with nothing offered but ibuprofen for such a painful [sic] injury, and your faulty exercise equipment that is not safe. **I want $40,000 dollar's [sic] for pain and suffering, for a medical condition that has not been properly attended to and may have**

**lingering effect because of your medical staff's treatment**. For all damages I'm asking for $40,000 dollars [sic].

ECF No. 16-3, page 1-2 (emphasis added).

The Initial Response to the Grievance was dated June 26, 2016 and denied Plaintiff's

Grievance. ECF No. 16-3, pages 4-5. In denying the grievance, Defendant CHCA Kim Smith[5]

analyzed Plaintiff's grievance as limited to the medical treatment received by Plaintiff after his

injury.

Plaintiff then filed his appeal to the facility manager:

> The denial of my grievance has no reason that would make sense for denial. First thing is that RN Hill never gave me an exam as stated in the report. Yes she checked my blood pressure and the little thing that's put on your finger and asked me to squeeze her finger and try to make a muscel [sic] while she holds my forearm back and that was pretty much it. Next I did go through RN Sutherland and he said he believed RN Hill analysis was wrong and he scheduled me for further texting [sic] and it showed some thing was really wrong and needed a true doctor analysis so I can have surgery and that has happened on 20[th] of June past date. There should've been some kind of acknowledgement from Ms. Smith from my current medical condition, I've been to the hospital and Dr's office and it seem from what's mentioned from RN Hill and Ms. Smith understanding is that during her exam I wasn't injured but where it could've happened came from all these date listed I was present at the gym, but to be on truth of my presence I went to the gym almost every pass so I didn't get kicked off my pass sent I was first-told my arm was OK by RN Hill so it seem smart to just go to the gym a sit around so please do check and see with activities camera footage so you can see I did no nothing that could injure my arm cause its seems I'm being accused of purpose. I also went to every to [sic] days I was scheduled from 4.12.17 till 6.20.17 when I had surgery and I could've worked on any other body part for exercise so why mention I went to the gym so I feel that bias. I was wrong on the date of 4.10.17 it happened on, I lost tract of time but knew it was the week of 4.10.17 and 4.12.17 I was scheduled for. Now there the issue with the response time it took for the extention [sic] request and initial review that I just received on

---

[5] No claim will lie for Smith's participation in the administrative remedy process. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1986).

10

7.11.17 but dated back to the 26th of June, in all it took 37 business days to answer, and that's 12 more days than policy. It took me 69 days from injuring my arm till surgery and the muscel [sic] was between 75% to 90% heeled [sic] before I [sic] it was fixed and that came from the Dr. and in that I'm in way more pain now and I have a very long recovery time and believed $40,000 or in assess [sic] of $40,000 would be appropriate. **The records show that truth and proves the bicep machine caused this problem** and pain plus it got overlooked by your medical staff during an exam, and none of my up-to-date records aren't present on 6.14.17 when the extension was asked for on the 20th of June, and the response date is listed as the 26th of June so that was more than 12 days to check the reports again, and I'm just receiving the initial review response 15 days sent if dates and work please like a review of the facts and medical reports before it is needed to take the next step in the grievance policy.

ECF No. 16-3, pages 6-7 (emphasis added). In response, Facility Manager Overmyer denied the appeal indicating that Plaintiff had received and would continue to receive the appropriate medical attention. Overmyer specifically indicated that "all issues presented have been thoroughly reviewed and addressed in 1[st] level response." ECF No. 16-3, page 8.

Thereafter, Plaintiff filed an appeal to SIOGA, the highest level of review. The appeal was denied addressing Plaintiff's concerns about his medical treatment and then indicating:

It is noted that you erroneously believe that your grievance was to have addressed a claim of faulty work out equipment. Be advised that a review of your grievance reveals that it was solely about your medical encounters, treatment, or condition. Additionally, any claims regarding the work out equipment would be a separate claim to be addressed in a separate grievance. Any attempt to file a grievance on this issue now may be deemed untimely.

ECF No. 16-3, page 10. According to Ms. Reeher, Plaintiff did not file any grievance on this issue thereafter. ECF No. 16-2, pages 1-2.

Plaintiff technically exhausted Grievance No. 679747 as he presented it to all three levels of review. Plaintiff argues that this grievance encompasses all the claims raised in this lawsuit – those arising out of the use of the faulty gym equipment and those arising out of the medical treatment following his injury. On this point, Plaintiff is mistaken.

The focus of Plaintiff's initial grievance is the medical attention he received following the injury, not the cause of the injury and not the lack of rehabilitation care. Moreover, although references to the "faulty" gym equipment are sprinkled throughout the grievance and appeal, the claim revolves around the medical treatment. Accordingly, Plaintiff has not exhausted any legal claim arising out of the accident in the weight room and summary judgment will be granted in favor of Kibbie, Hayes, Overmyer and Sawtelle on the legal claims of deliberate indifference, failure-to-protect and negligence. Additionally, Plaintiff has not utilized the administrative remedy process with regard to any claim against Smith for her failure to provide rehabilitation services after surgery. Summary judgment will be granted in her favor in this regard.

## Deliberate Indifference

Next, Defendants argue that the deliberate indifference claim arising out of the medical treatment provided to Plaintiff should be dismissed due to Plaintiff's failure to state a claim. Because no evidence has been submitted on this claim, the dispositive motion will be analyzed under the motion to dismiss standard.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). To establish a violation of the constitutional right, a claimant must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed

12

medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation omitted).

When presented with a motion to dismiss for failure to state a claim, a court must view the factual allegations in the light most favorable to the plaintiff. Erickson, 551 U.S. at 93. Here, Plaintiff alleges the delay in medical treatment for his obvious torn bicep violated his Eighth Amendment rights. According to Plaintiff's version of the events, although he was examined in the Medical Department immediately after the accident in the weight room on April 12th, he was not examined again until ten days later on April 24th despite repeated requests for medical attention. Five weeks after the initial injury, Plaintiff underwent an ultrasound revealing a torn bicep and on June 20th, nine weeks after the injury, Plaintiff had surgery. Plaintiff claims the delay in surgery resulted in pain and permanent damage to his arm function.

Plaintiff's complaint is sufficient to survive the motion to dismiss on his deliberate indifference claim. See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326,

13

346 (3d Cir. 1987) (internal citations omitted) ("Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest. Similarly, where knowledge of the need for medical care is accompanied by the ... intentional refusal to provide that care, the deliberate indifference standard has been met."). Though conclusory, Plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. While proving his allegations is far removed from pleading them, Plaintiff will be allowed to pursue discovery on this claim. The question on a motion to dismiss is not whether the plaintiff will prevail in the end. Rather, the question "is whether the plaintiff is entitled to offer evidence in support of his or her claims." Swope v. City of Pittsburgh, 90 F. Supp. 3d 400, 405 (W.D. Pa. 2014) citing Oatway v. Am. Int'l Grp., Inc., 325 F.3d 184, 187 (3d Cir. 2003).

     An appropriate order follows.


                     /s/ Susan Paradise Baxter
                     SUSAN PARADISE BAXTER
                     United States District Judge

Dated: December 20, 2018